# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ERICA BANKS, ANDREA TONEY, DEMETRIA WIDEMAN, and JESSICA WASHINGTON, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ATLANTA, GEORGIA; CHARLES EWING, in his Individual Capacity, <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 1:19-cv-03946-WMR <br><br> JURY TRIAL DEMANDED |

## **AMENDED COMPLAINT**

Plaintiffs Erica Banks, Andrea Toney, Demetria Wideman, and Jessica Washington respectfully submit the following Amended Complaint:

## **INTRODUCTION**

At all times relevant to this dispute, Defendant Charles Ewing was a supervisor within the Traditional Concessions Section of the Aviation Department of the City of Atlanta at Hartsfield-Jackson International Airport. Ewing had previously retired from the City of Atlanta after female employees made sexual harassment allegations against him, but he came back to work for the City in or around 2014. During both

1

his first and second periods of employment with the City, Ewing subjected female employees, including Plaintiffs, to repeated unwanted sexual advances, comments, and touching. Plaintiffs rejected these advances. Plaintiffs each reported Ewing to Employee Relations or to their supervisors, including Paul Brown, who was not surprised by their reports. Plaintiffs bring claims of sexual harassment (hostile work environment) against both the City and Defendant Ewing under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs also assert state law tort claims and Title VII gender discrimination/sexual harassment claims. Plaintiffs seek declaratory and injunctive relief, damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

1. Plaintiffs' claims under the Fourteenth Amendment, actionable under 42 U.S.C. § 1983, present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

2. This Court is a proper venue for Plaintiffs' claims under 28 U.S.C. § 1391(b), because the Defendants reside in the Northern District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

## THE PARTIES

3. Plaintiffs are residents of the Northern District of Georgia and are subject to this Court's jurisdiction.

4. Defendant Ewing is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. He may be served with process at his residence, 119 Little Gem Court, Griffin, Georgia 30223-6466.

5. The City of Atlanta ("The City") is a municipal corporation doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia. The City of Atlanta may be served with process by serving the Mayor at the Office of the Mayor, Executive Offices, 55 Trinity Avenue, Atlanta, Georgia 30303.

## FACTUAL ALLEGATIONS

6. Defendant Ewing worked for Defendant City of Atlanta in the Aviation Department at Hartsfield-Jackson International Airport during the 2000s.

7. During his first stint of employment with the City of Atlanta, Ewing made inappropriate comments to and about women.

8. During this first stint, Ewing approached Plaintiff Demetria Wideman, a Management Analyst who had worked for the City of Atlanta since 2010, about having sexual relations.

9. Ewing told Wideman that he would pay her to have sex with her and told her to name her price.

3

10. Wideman was pregnant and married at the time, and she refused his advances.

11. When Wideman told Ewing there would be no price, he wrote a dollar figure of $2,500 on the white board.

12. After about one year, Ewing increased the dollar figure to $3,500.

13. In or around December 2010, Ewing retired from the City of Atlanta.

14. Upon information and belief, Ewing's retirement was not voluntary as he left the City of Atlanta after women filed reports of sexual harassment against him.

15. Despite the sexual harassment allegations, the City of Atlanta rehired Ewing to the Aviation Department in 2014.

16. Upon his return, Ewing continued to harass female employees.

17. He often told women, including Plaintiffs, to let him "kiss it."

18. Ewing propositioned Plaintiff Erica Banks, an Accounting Manager, telling her he would pay her to dance for him nude.

19. Ewing also grabbed Banks's butt.

20. In mid-2016, Plaintiff Jessica Washington began working for the City of Atlanta as a Management Analyst in Non-Traditional Concessions.

21. Ewing began frequenting Washington's cubicle daily and making

comments about her attire, including: "Girl, you look so good in that dress," and "You're really wearing that dress."

22. In 2017, Roosevelt Council, the Interim Office Manager/General Manager, called Banks.

23. Council told Banks that two concessionaires within Concessions had complained about sexual harassment perpetrated by Ewing.

24. Banks told him that the concessionaires were telling the truth.

25. Council told her, "That 'p' will get you in trouble."

26. In March 2017, Washington became pregnant and Ewing told her how good she looked while she was pregnant.

27. Ewing frequently asked Washington about her sex life with her boyfriend and whether she was going to marry her boyfriend.

28. After Washington returned from FMLA leave related to her pregnancy and post-partum symptoms in June 2018, Ewing continued harassing her.

29. Ewing would moan and groan while he looked at her and would tell her what he would do to her if she was his wife.

30. When Washington tried to change the subject, Ewing would bring up Washington's body or the possibility of a relationship between them.

31. In January 2019, Plaintiff Andrea Toney joined the Aviation Department

5

as a Senior Administrative Assistant for Ewing.

32. Toney worked for the City of Atlanta since 2004 in other departments.

33. Ewing would tell Toney that she could ask him for anything and that the answer would always be "yes."

34. Ewing told Toney that she should get a separate bank account from her husband so that her husband would not know all her business if someone wanted to do something nice for her.

35. One day when Toney was preparing to go home for lunch, Ewing asked her if she was meeting her husband. When Toney said she was not, Ewing told her a story of a former coworker who met her husband at home for sex and ended up getting pregnant.

36. Ewing also told Toney a story about how his military friend's wife would dress up in sexy costumes and asked her if she dressed up in sexy costumes for her husband.  Toney did not respond.

37. On a separate occasion, Ewing told Toney that, "Girl, if you knew what I was thinking, there would be a sexual harassment case on me."

38. Ewing once held and hugged Toney so close that she had to push him off of her.

39. When Toney wore heels, Ewing told her that she should wear heels more

6

often because they really showed the form and shape of her legs.

40. Later that year, in or around the third week of April 2019, Ewing told Washington that he would buy Washington whatever she wanted and that he would take care of her.

41. When Washington denied Ewing's advances, he asked her why she was unmarried. He continued to moan and groan while he looked at her.

42. About a week later, on April 30, 2019, at Industry Day, Ewing approached Washington at the check-in table and told her he wanted to talk with her. When she asked him what he wanted to talk about, he responded, "About us."

43. Ewing told Washington that he wanted her, but she told him she was not interested.

44. After Washington rebuffed his advances, Ewing stated that he and his wife receive five checks per month and that he could give her whatever she wanted.

45. Washington looked disgusted, so Ewing asked her if he was barking up the wrong tree. Washington told him that he was.

46. Ignoring Washington's comment, Ewing put his left arm around her waist and rubbed up and down the left side of her buttocks with a smirk on his face.

47. Horrified, Washington sat back down in her chair.

48. Though Ewing was called across the room, he continued to stare at

Washington from across the room.

49. When Washington returned to the office, she reported the events to Terral Hardy, her co-worker.

50. Hardy reported the event to the Assistant General Manager, Paul Brown.

51. On the same day that Ewing harassed Washington at Industry Day, he also kissed Wideman without her consent.

52. On May 1, 2019, Wideman called Brown to inform him of the unconsented kiss and inappropriate comments.

53. After hearing Wideman's complaint, Brown told Michael Smith, the Senior Deputy General Manager, about the complaint.

54. Later that morning, Lisa Wilson from HR called Wideman and said that Brown and Smith told her what happened. Wideman then orally relayed the details of the inappropriate comments and kiss to Wilson.

55. On May 2, 2019, Wideman filed a written report.

56. On May 6, 2019, Wideman had an interview with Employee Relations.

57. Wideman also told Banks about the incident on May 7, 2019.

58. After hearing about Wideman's incident with Ewing, Banks emailed Brown on May 7, 2019 and asked if they could speak immediately.

59. When Brown came to speak with Banks, she told him that Ewing had also sexually harassed her and inappropriately touched her on the butt.

60. Brown revealed that the higher-level administration was aware of Ewing's inappropriate sexual behavior.

61. Brown also mentioned that there were at least twelve complaints of sexual harassment against Ewing.

62. Toney filed a complaint with Employee Relations on May 8, 2019 and subsequently met with Employee Relations to discuss its contents.

63. Washington and Banks also met with Employee Relations to discuss their complaints about Ewing around this time.

64. Ewing resigned on May 24, 2019.

## Governmental and Decision Maker Liability

65. The highest City official(s) with responsibility to protect Plaintiffs against sexual harassment had actual or constructive knowledge of Ewing's illegal actions giving rise to this Complaint.

66. Despite such actual or constructive knowledge, these officials failed to take reasonable, prompt, remedial action as required by the City anti-harassment policies and federal law to protect Plaintiffs' rights to be free from Ewing's sexual harassment.

67. Ewing, along with the City officials who knew of Ewing's illegal harassment and failed to stop it, acted under color of state law when committing their acts or omissions giving rise to this Complaint as all of their conduct was perpetrated using the power and authority of their positions as City officials.

68. At all times material to this Complaint, it was clearly established law that subjecting an employee to sexual harassment or a sexually hostile working environment based upon gender violates the Equal Protection Clause.

## **Punitive Damages Allegations**

69. Defendant Ewing undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to the Plaintiffs and their federally protected rights.

70. Additionally, and in the alternative, Defendant Ewing undertook all of the above-pled conduct with reckless disregard for the Plaintiffs and their federally protected rights.

## COUNT I
## Sexual Harassment/Gender Discrimination
## (42 U.S.C. § 1983 Against Defendant City of Atlanta and Defendant Ewing)

71. Plaintiffs incorporate each of the above factual allegations as if fully restated here.

72. The Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution entitles Plaintiffs to equal protection under the laws regardless of their gender.

73. Defendant Ewing violated Plaintiffs' rights to equal protection by, among other things, subjecting them to a sexually harassing hostile working environment.

74. Defendant City violated Plaintiffs' rights to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct.

75. The conduct of Defendants constitutes unlawful sexual harassment, based upon gender, in violation of the Equal Protection Clause.

76. Defendants undertook all of the unlawful conduct giving rise to the Plaintiffs' claims while acting under color of state and local law.

77. Defendants' unlawful conduct violated the above-pled clearly established law.

78. As a direct and proximate result of all of the Defendants' actions, Plaintiffs have suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

79. Defendants undertook their unlawful conduct intentionally and maliciously with respect to Plaintiffs and their federally protected rights, entitling Plaintiffs to recover punitive damages against them.

80. Alternatively, Defendants undertook their unlawful conduct recklessly with respect to the Plaintiffs and their federally protected rights, entitling Plaintiffs to recover punitive damages against them.

## COUNT II
### Assault
**(Against Defendant Ewing in his Individual/Personal Capacity)**

81. Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

82. The actions of Defendant Ewing described above constitute assault as he threatened to and did in fact make unjustified, harmful, and offensive contact with Plaintiffs.

83. As a direct and proximate result of the assault committed by Defendant Ewing, Plaintiffs suffered, and will in the future suffer from these and other damages.

84. Defendant Ewing acted with malice when he assaulted Plaintiffs.

## COUNT III
### Battery
**(Against Defendant Ewing in his Individual/Personal Capacity)**

85. Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

86. The actions of Defendant Ewing described above constitute battery as he made unjustified, harmful, and offensive contact with Plaintiffs. For example, Defendant Ewing rubbed Jessica Washington and Erica Banks's buttocks, held Andrea Toney too close, and kissed Demetria Wideman.

87. As a direct and proximate result of the battery committed by Defendant Ewing, Plaintiffs suffered, and will in the future suffer from these and other damages.

88. Defendant Ewing acted with malice when he battered Plaintiffs.

## COUNT IV
### Negligent Hiring, Retention, and Supervision
### (Against Defendant City of Atlanta)

89. Plaintiffs incorporate all preceding paragraphs of the Complaint.

90. The City owed a duty of care to Plaintiffs to exercise reasonable caution and diligence when hiring Defendant Ewing so as to avoid hiring a man who could be reasonably foreseen to sexually harass, assault, or otherwise endanger female employees as Defendant Ewing did in this case.

91. Defendant City breached this duty of care by, inter alia, ignoring the prior reports of sexual harassment made against Defendant Ewing, failing to perform reasonable pre-employment investigation and inquiry concerning Defendant Ewing, and by otherwise failing to exercise reasonable caution and diligence when hiring him.

92. As a direct and proximate result of Defendant City's breach of this duty of care, Plaintiffs have suffered damages, including emotional damages.

93. After hiring Defendant Ewing, Defendant City owed a continuing duty of care to Plaintiffs to exercise reasonable caution and diligence in retaining, supervising, and training Defendant Ewing to avoid reasonably foreseeable conduct amounting to

sexual harassment, assault, battery or otherwise endangering female employees as Defendant Ewing did in this case.

94. Defendant City breached this duty of care by, inter alia, failing to intercede despite actual and/or constructive knowledge making it reasonably foreseeable that Defendant Ewing would sexually harass, assault, or otherwise endanger female employees like Plaintiffs as happened in this case.

95. As a direct and proximate result of Defendant City's breach of his duty of care, Plaintiffs have suffered damages, including emotional damages.

## COUNT V
### Punitive Damages O.C.G.A. § 51-12-5.1
### (Against Defendant Ewing
### in his Individual/Personal Capacity)

96. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

97. Defendants' above-pled actions were willful, malicious, wanton and/or oppressive within the meaning of O.C.G.A. § 51-12-5.1(b). Additionally, and in the alternative, Defendants' actions display within the meaning of that statute, an entire want of care indicative of a conscious indifference to their actions' consequences.

## COUNT VI
### Attorneys' Fees and Expenses of Litigation O.C.G.A. § 13-6-11
### (Against All Defendants)

98. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein. Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiffs

unnecessary trouble and expense in litigating this case, and Plaintiffs are thus entitled to recovery of the expenses of this litigation, including attorneys' fees, under Georgia law, including but not limited to O.C.G.A. § 13-6-11.

## COUNT VII
### Title VII Sexual Harassment
### (Against City of Atlanta)

99. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

100. Title VII entitles Plaintiffs to equal treatment under the laws regardless of their gender.

101. Defendant City violated the Plaintiffs' rights to equal treatment by, among other things, subjecting them to a sexually harassing and hostile working environment. Defendant City violated their Title VII rights by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct.

102. Defendant City's conduct constitutes unlawful sexual harassment, based upon gender, in violation of Title VII.

103. As a direct and proximate result of Defendant City's actions, Plaintiffs have suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation and other indignities.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests the following relief:

a. declaratory judgment that Defendants violated the Plaintiffs' rights under the Equal Protection Clause;

b. an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

c. compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

d. punitive damages, against Defendant Ewing in their individual capacity, in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendant Ewing for his conduct toward Plaintiff and deter him from similar conduct in the future;

e. reasonable attorneys' fees and costs; and

f. other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

LEGARE, ATTWOOD & WOLFE, LLC

           *s/Eleanor Mixon Attwood*
           Eleanor Mixon Attwood
           Georgia Bar No. 514014
           emattwood@law-llc.com
           Marissa R. Torgerson
           Georgia Bar No. 848356
           mrtorgerson@law-llc.com

125 Clairemont Avenue,
Suite 380
Decatur, Georgia 30030
Telephone: 470.823.4000
Facsimile: 470.201.1212

Counsel for Plaintiff